No. 15,696.

JOHNSON v. DENVER TRAMWAY CORPORATION ET AL.
(171 P. [2d] 410)

Decided July 1, 1946.

Messrs. January & Yegge, for plaintiff in error.

Mr. H. Lawrence Hinkley, Attorney General, Mr. Duke W. Dunbar, Deputy, Barbara Lee, Assistant, Mr. W. A. Alexander, Mr. Donald B. Robertson, Mr. James B. Young, for defendants in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

This is a workmen's compensation case. We will hereinafter refer to Gladys Johnson as claimant, the Denver Tramway Corporation as Tramway Company or employer, and the Industrial Commission of Colorado as Commission.

Claimant is the widow and sole heir of Herbert Bryan Johnson who died March 4, 1943, as the result of injuries incurred in an accident arising out of and in the course of his employment as a motorman for the Tramway Company, a self insurer. The Tramway Company admitted its liability, but contended that the death was the result of Johnson's "wilful failure" to obey a reasonable rule adopted by it for his safety, and, consequently, under the provisions of section 362, chapter 97, '35 C.S.A., its liability was only fifty per cent of the statutory amount to which claimant would otherwise be entitled. Said section provides, inter alia:

"The compensation provided for herein shall be reduced fifty per cent:

\* \* \*

"(b) Where injury results from the employee's wilful failure to obey any reasonable rule adopted by the employer for the safety of the employee."

A hearing was had before a referee of the Commission, as a result of which the referee entered an order awarding claimant $60.76 monthly until the sum of $4,375.00 was paid or until the further order of the Commission. Subsequently the Commission entered a supplemental award finding that the death was the result of the employee's "wilful failure" to obey a reasonable safety rule of the employer and it therefore reduced the amount of the compensation award fifty per cent. Claimant thereupon instituted an action in the district court which, upon hearing, remanded the cause to the Commission for further proceedings. Pursuant to the order of the district court, the referee of the Commission held a further hearing, resulting in a supplemental order in which claimant was awarded the full statutory compensation. Thereafter the Commission entered its supplemental award in which it found that the employee came to his death by reason of injuries arising out of and in the course of his employment, but that the death was the result of a "wilful failure" to obey a reasonable rule adopted for his safety, and, again reduced the amount of the award fifty per cent. Claimant again took the matter to the district court, wherein judgment was entered affirming the award of the Commission and dismissing the complaint.

The question presented for our consideration is whether the trial court erred in affirming the award of the Commission under the provisions of section 362, supra, and in refusing to enter an award in accordance with the provisions of section 333, chapter 97, '35 C.S.A.

The record discloses that decedent had been employed by the Tramway Company for many years; had operated electric cars on this particular run; was thoroughly familiar with the rules promulgated by the Tramway Company and with the importance of train orders and the probable consequence of disobedience of such rules; and, because he was considered a careful and experienced employee, he had been selected by the Tramway

Company to train its new employees in the operation of electric cars on its system. At the time of the accident resulting in his death, decedent was operating a westbound electric car which collided with an east-bound freight train of the Denver and Interurban Railway Company on a single track about a half mile west of Swadley, Colorado. The records show that decedent, while enroute, reported at Lakeside to the train dispatcher for the Tramway Company and there received and copied an order given him by the dispatcher instructing him to "pull on" the switch at Swadley for the purpose of permitting the east-bound freight train to pass through Swadley on the main line.

The pertinent rules of the Tramway Company applicable to this case were: "No car or train will leave any initial station, a siding, or enter the main line without orders from the dispatcher." "When any train reaches a meeting point and finds that train or trains to be met have not arrived, the motorman shall immediately call the dispatcher for orders." "For movements not provided for by timetable, train orders will be issued by authority and over the signature of dispatcher."

The undisputed evidence is that at the time of the accident it was snowing; that decedent failed to obey orders to meet the east-bound freight train at Swadley, and that a collision, resulting in Johnson's death, occurred about half a mile westerly from Swadley.

As we have said, the question for our determination is whether, under the evidence, the district court correctly entered judgment on the award of the commission for the statutory amount less fifty per cent. If decedent's death was the result of his "wilful failure" to obey a reasonable rule adopted by the Tramway Company for his safety, the judgment is right and must be affirmed; otherwise, reversed.

The Commission based its award on our decision in *Stockdale v. Industrial Commission,* 76 Colo. 494, 232 Pac. 669, and it quoted at length therefrom. We think

it misconstrued our opinion. Therein we said: "The chief point made against the finding of the Commission is that there is no evidence that the disobedience was 'wilful.' The meaning of the word, as used in this place, is 'with deliberate intent.' "

An examination of the file in *Stockdale v. Industrial Commission, supra,* discloses that the employee Hunter died as a result of injuries received in an accident arising out of and in the course of his employment. It was there held that under the factual situation disclosed Hunter was guilty of a "wilful failure" to obey a reasonable rule adopted by the employer for his safety. The factual situation in the case disclosed at the hearing is that Hunter was an employee of a road contractor and lived at a camp established for the accommodation of the employees. In entering the camp it was necessary to cross a creek or river over which there was constructed a bridge. The employer made an examination of the bridge structure, determined that it was unsafe for use, and forbade his employees to use the bridge under penalty of discharge. Subsequently to the first examination the bridge was repaired by the landowner, and a second examination was made by the employer, who maintained his position that the bridge still was unsafe for the support of heavy loads, although it was used by the landowner in hauling light loads of hay, and had been used by the employer while driving auto trucks. On the morning of the accident resulting in Hunter's death, the employer had given him express permission to cross the bridge with a team and wagon on which an empty water tank was placed, and on one other occasion the employer had permitted an employee other than Hunter to cross the bridge with a team and wagon, cautioning him that this was not to become a habit. When Hunter had filled the water tank and was returning with it to the camp, he had the choice of disobeying the orders of the employer and again crossing the bridge, or taking a longer, more circuitous and less

convenient route to the camp. The bridge might or might not have been safe for the passage of the team, wagon and loaded water tank; the employer might have been too conservative in his estimate of the strength of the bridge, and with these possibilities in mind, Hunter deliberately took the chance, attempted to cross the bridge, which collapsed, and he suffered injuries result-- ing in his death. The court was justified in finding from the undisputed evidence that Hunter probably weighed the situation and came to a conclusion that the bridge was safe for his passage, and with deliberate intent violated his employer's rule. Under such circumstances we found that the trial court was right in affirming the award of the Industrial Commission reducing the compensation awarded decedent's dependent child.

In the instant case the record discloses that decedent was familiar with the operation of electric cars on the particular route involved. He knew that the disobedience of a dispatcher's orders with reference to taking the siding for the purpose of permitting another train to pass would inevitably result in a collision in which his life and the lives of his passengers would be endangered, and his employer's property damaged or destroyed. There is a presumption against suicide, and likewise against intentional injury to oneself and others. The only surviving person on the electric car operated by decedent testified at two hearings before the referee of the Industrial Commission. At the time of the first hearing this witness had a claim for damages against the Tramway Company by reason of injuries sustained by her in the collision. If her testimony is to be believed, the brakes on the electric car were so defective that decedent had lost all control thereof and had passed the switch at Swadley at a speed of forty miles per hour. He was an experienced operator and must have realized that the brakes were defective, if such was the fact, notwithstanding, according to the witness' testimony, decedent, realizing that a collision was inevitable,

calmly asked her and the other passenger on the car if they wanted copies of schedules that had just been put into effect. At the second hearing it developed that this witness had settled any claim for damages which she had against the Tramway Company, and, strangely enough, her testimony given at that hearing is entirely different, for, under her evidence at the second hearing, there was little, if any, question as to defective brakes. In view of this situation her testimony was entitled to little, if any, credit. It might be considered that all the evidence regarding decedent's actions in the operation of the car after passing the Swadley switch was wholly immaterial, for the accident was occasioned solely because of his neglect to obey train orders requiring him to stop at Swadley until the east-bound freight train had passed that point.

The factual situation in the instant proceeding is materially different from that existing in the Stockdale case, and the question now posed is whether, under the factual situation here, decedent's disobedience of his employer's reasonable rules, adopted for his safety, was willful as that term is defined in the Stockdale case.

Was Johnson's "wilful failure" to obey the orders deliberate? We have studied workmen's compensation acts in other jurisdictions and find the Wisconsin act, adopted in 1911, contains a provision authorizing a reduction in compensation identical with the provisions of our statute. "Where injury is caused by the wilful failure of the employe to use safety devices where provided by the employer, *or where the injury results from the employe's wilful failure to obey any reasonable rule adopted by the employer for the safety of the employe,* or where injury results from the intoxication of the employe, the compensation, and death benefit provided herein shall be reduced fifteen per cent." (Italics ours) Wis. Stats. 1939, p. 1546, §102.58.

The particular phrase of the Wisconsin act above italicized has been construed by the Supreme Court of that

state in several cases. "Counsel for appellant refers to sub. sec. * * * relating to reduction of compensation fifteen per cent. in case of wilful failure to obey any reasonable rule adopted by the employer for the safety of the employee. We are of opinion that there was no wilful failure to obey a rule of the employer by Healey within the meaning of the statute. *Mere violation of a rule does not always constitute wilful misconduct. To have that effect, the disobedience must have been deliberate, not merely* a thoughtless act on the spur of the moment." (citing cases) (Italics ours) *Frint Motor Car Co. v. Industrial Commission,* 168 Wis. 436, 170 N.W. 285.

In *Milwaukee Corrugating Co. v. Industrial Commission,* 197 Wis. 414, 222 N.W. 251, the court had under consideration the proper construction of the words "wilful failure" as used in the Wisconsin compensation act, and in defining "wilful," adopted the following from *McManus v. State,* 36 Ala. 285: " 'Willful is not the synonym of voluntary. In truth, they express no distinct idea which is common to both. The former is a word of much greater strength than the latter. Willful, in this connection, denotes "governed by the will; without yielding to reason; obstinate; stubborn; perverse; inflexible." Voluntary, in this connection, means "willing; acting with willingness." It is the antithesis of involuntary'."

In the same opinion the following definition of "wilful," taken from 40 Cyc. 938, was adopted:

"The words 'wilful' and 'wilfully' are of somewhat varied signification according to the context in which they are used in particular cases and the nature of the subject under discussion or treatment. They are frequently used in the sense of intentionally, or in other words as implying a purpose or design, or proceeding from a conscious motion of the will as distinguished from accidentally or involuntarily; and they are accordingly used in the sense of or as equivalent to willingly;

designedly; purposely; obstinately; stubbornly; inflexibly; perversely; voluntarily; deliberately; with set purpose; being governed by the will without regard to reason, or without yielding to reason. * * * "

"It has been held that the word 'wilful' imports that the conduct was deliberate and not merely a thoughtless act on the spur of the moment or an act showing a lack of judgment; *that it is the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable consequences;* that the deliberate, wilful, premeditated violation of a rule made for the protection of the employee himself against the consequence of an accident is wilful misconduct." (Italics ours) Workmen's Compensation Law, Schneider (2d ed.), vol. 1, p. 876, §282.

"That the injury was occasioned by the employe's intentional disobedience of an order is not conclusive against him. To have that effect the disobedience must have been willful; it must have been intentional, and premeditated, and must have proceeded from a conscious motion of the will in opposition to the authority of the employer. * * * " 1 Honnold on Workmen's Compensation, p. 555, §141.

Deliberate means: "2. Given to weighing facts and arguments with a view to a choice or decision; careful in considering the consequences of a step; circumspect. 3. Slow in action; unhurried. 4. Characterized by reflection; dispassionate; not rash; * * * " Webster's International Dictionary (1946 ed.).

█ The burden of establishing that the decedent's death was the result of his "wilful failure" to obey a reasonable rule was upon the Tramway Company. Decedent's failure to stop at Swadley in obedience to his train orders may have been the result of carelessness, negligence, forgetfulness, remissness or oversight, or it may have been occasioned by his failure to observe the

switch at Swadley because of the snowstorm. Such would not necessarily be "wilful failure," because any of them might occur without a "deliberate intent" on the part of decedent and would not of itself establish a "wilful failure" as those words are construed in *Stockdale v. Industrial Commission, supra.*

■■ Our construction of the words "wilful failure" as they are used in workmen's compensation cases, finds support in the following: *Simmons Co. v. Industrial Commission,* 211 Wis. 445, 248 N.W. 443; *King v. Empire Collieries Co.,* 148 Va. 585, 139 S.E. 478; *Jones v. Landry,* 10 La. App. 740, 122 So. 913; 71 C.J., p. 875, §602. See, also, annotations in 9 A.L.R., p. 1377; 23 A.L.R., p. 1161; 26 A.L.R., p. 166; 58 A.L.R., p. 197; 83 A.L.R., p. 1211; 119 A.L.R., p. 1409.

"Wilful failure" on decedent's part justifying a reduction in the statutory award had to result from a deliberate intent on his part to disobey the rules of the Tramway Company as well as the orders of the train dispatcher.

As above indicated, the collision may have been the result of thoughtlessness, forgetfulness, or even negligence on the part of decedent, without being a "wilful failure," as that term is defined in *Stockdale v. Industrial Commission, supra,* for these mental conditions may be present without a deliberate intent. There is no competent evidence disclosed by the record which would justify the action of the Commission or the trial court in finding that Johnson was guilty of a "wilful failure" to obey any reasonable rule adopted by the Tramway Company for his safety, and, consequently, the court erred in so determining. The word "wilful" used by the legislature in enacting the statute must be given a reasonable interpretation in accord with the objective to be attained, and both the Commission and trial court failed in this respect in applying the law.

The judgment is reversed and the cause remanded to

the district court with instructions to enter a judgment in conformity with the views herein expressed.

Mr. Justice Burke and Mr. Justice Bakke dissent.

Mr. Justice Jackson does not participate.